# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

BRUCE KEISHAWN SALTER  *
                       *
    Plaintiff,         *
                       *
vs.                    * CIVIL ACTION NO. 15-00372-KD-B
                       *
HALLIE S. DIXON        *
                       *
    Defendant.         *

## REPORT AND RECOMMENDATION

This matter, which was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), is before the Court on Defendant Hallie S. Dixon's Motion to Dismiss and accompanying brief in support (Doc. 15, 16), Plaintiff Bruce Keishawn Salter's Response in Opposition (Doc. 21), and Defendant's Reply (Doc. 22). Upon a careful review of the motion, briefs, and the applicable case law, the undersigned **RECOMMENDS** that the motion be **GRANTED**, and that this action be **DISMISSED**.

### I. Background

Plaintiff Bruce Keishawn Salter (hereinafter "Plaintiff" or "Salter") filed this action against Defendant Hallie S. Dixon (hereinafter "Defendant" or "Dixon") in her official capacity as District Attorney of Baldwin County, Alabama. (Doc. 1). According to Salter, he reached an immunity agreement with Dixon, and Dixon has violated the agreement by filing criminal

charges against him in the Circuit Court of Baldwin County. Salter seeks an order enjoining the state criminal prosecution, and an award of reasonable attorney's fees, expenses and costs.

In his complaint, Salter alleges that a homicide occurred in Fairhope, Alabama on or about January 14, 2013, and that a few days later, he reached out to Dixon, through his counsel, regarding his knowledge of the homicide. (Id.). Salter further alleges that a meeting was conducted which resulted in an immunity agreement between him and Dixon, acting on behalf of the State of Alabama. According to Salter, he agreed to offer knowledge about the homicide in exchange for "immunity and/or use immunity". (Id.). "Under the agreement, Salter agreed to proffer his knowledge about the homicide, and Dixon agreed, on behalf of the State of Alabama, and in her capacity as District Attorney of Baldwin County, to grant Salter immunity/and or use immunity, in that Dixon agreed that any truthful information given by Salter, or any information derived from his statements and information, would not be used against him." (Id. at 3-4). After reaching this agreement, Dixon left the meeting, and Captain Steve Arthur and Sergeant Michael Gaull of the Baldwin County Sheriff's Department questioned Salter extensively about the details of the homicide and examined his phone. (Id. at 4). The officers also conducted follow up interviews with Salter. Salter contends that based on information he provided, a suspect

was apprehended and charged. Later, on June 24, 2013, a warrant was issued for Salter's arrest on capital murder charges. (Id. at 5) Salter was arrested and a grand jury in the Circuit Court of Baldwin County, Alabama returned a six-count indictment against him. (Id. at 6).

In this action, Salter claims that he performed fully and completely under the immunity agreement between himself and Dixon, and that Dixon has violated the agreement by instituting criminal charges against him. (Id.). Salter contends that the only basis for the criminal charges against him are the statements he made to Dixon under the promise of immunity, and that Dixon turned around and used the information to obtain the capital murder indictment against him. (Id.). Salter also contends that the breach of the immunity agreement deprives him of his fundamental Fifth Amendment right against self-incrimination and his due process rights under the Fourteenth Amendment. (Id. at 7).

As noted *supra*, pending before the Court is Dixon's motion to dismiss. (Doc. 15). Dixon contends that Salter's complaint should be dismissed because it does not allege the breach of any purported agreement, as there is no evidence that any immunized statements made by Salter will be used as evidence in his trial and the mere act of issuing an indictment against Salter does not breach the proffer agreement. (Doc. 15). Dixon further

3

argues that even if Salter had alleged a breach of the agreement, Salter has failed to set forth facts which demonstrate the showing of bad faith necessary to sustain an action and come within an exception to the *Younger* abstention doctrine. (Id.). According to Dixon, this case does not fall under the exception to *Younger* abstention recognized by the Eleventh Circuit in Rowe v. Griffin, 676 F.2d 524 (11th Cir. 1982) because Rowe dealt specifically with transactional immunity, not the use immunity present in the instant case.

In Salter's response in opposition, he contends that he has pled sufficient facts to survive dismissal because he has alleged the existence of an immunity agreement, his performance under the agreement, and the fact that Dixon secured an indictment against him using the very information that he provided pursuant to the proffer agreement. (Doc. 21). He further claims that federal court is his only available avenue because pursuant to Ex parte Graddick, 501 So.2d 444 (Ala. Crim. App. 1978), the Alabama Supreme Court does not recognize immunity agreements unless they are signed by both the district attorney and the trial court judge. Therefore, he must turn to this Court for the protection of his fundamental due process rights. (Id.).

Salter also claims that his case falls within an exception to the *Younger* abstention doctrine because of the presence of

exceptional circumstances involving bad faith. Relying on <u>Rowe v. Griffin</u>, 676 F.2d 524 (11th Cir. 1982), Salter argues that in that case, the Eleventh Circuit enjoined a criminal prosecution, and made clear that "where state courts fail, for whatever reason, to protect fundamental constitutional rights, it is the federal court's obligation to intervene." (Doc. 21 at 14). Salter contends that regardless of whether transactional immunity or use immunity is at issue, the Court's analysis in <u>Rowe</u> came down to the defendant's reasonable expectations, and in this case, he had a reasonable expectation that if he gave truthful information, the information would not be used to prosecute him. He relied on Dixon's promise, and now she is seeking to use the very information that he provided to her to prosecute him.

**II. <u>Discussion</u>**

    **a. Legal Standard**

In considering a Rule 12(b)(6) motion to dismiss, the court accepts the non-moving party's allegations as true; however, the court is not required to accept a plaintiff's legal conclusions. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (noting "the tenant that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, the court makes

5

reasonable inferences in the plaintiff's favor, "but [is] not required to draw [p]laintiff's inference." Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. Id.; see also Iqbal, 129 S. Ct. at 1951 (stating conclusory allegations are "not entitled to be assumed true").

In Iqbal, the Supreme Court reiterated that although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 129 S. Ct. at 1949. A complaint must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss. Id. The well-pled allegations must nudge the claim "across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff is required to give the defendant fair notice of the plaintiff's claim and the grounds on which it rests. See Erickson v. Pardus, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed.

6

2d 1081 (2007)(citing Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007)).

**b. Analysis**

Because Salter's state criminal prosecution is ongoing, the Supreme Court's decision in Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971) is controlling. In *Younger*, the Supreme Court held that federal courts "should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." Id. at 43-44. The *Younger* abstention doctrine is premised upon a fundamental "public policy against federal interference with state criminal prosecutions." Id. at 43. Exceptions to *Younger* are made in only three circumstances: "(1) there is evidence of state proceedings motivated by bad faith, (2) irreparable injury would occur, or (3) there is no adequate alternative state forum where the constitutional issues can be raised." Hughes v. Attorney Gen. of Fla., 377 F.3d 1258, 1263 n.6 (11th Cir. 2004).

As noted *supra,* Salter relies on the Eleventh Circuit's decision in Rowe v. Griffin, 676 F. 2d 524 (11th Cir. 1982) to argue that this Court should enjoin his state prosecution because Dixon is violating his immunity agreement. In Rowe, the Eleventh Circuit addressed *Younger* and observed that:

> "Ordinarily a federal court should refrain from interfering with a pending state criminal prosecution, either by injunction or declaratory judgment. Younger v. Harris, supra; Samuels v. Mackell, 401 U.S. 66, 91 S. Ct. 764, 27 L. Ed. 2d 688 (1971). Equitable intervention is appropriate only when there exist special circumstances which create a threat of great, immediate, and irreparable injury. Kugler v. Helfant, 421 U.S. 117, 123, 95 S. Ct. 1524, 1530, 44 L. Ed. 2d 15 (1975); Younger, 401 U.S. at 46, 91 S. Ct. at 751. Prosecutions taken in bad faith or for the purpose of harassment fall within this exception. Younger, 401 U.S. at 49-54, 91 S. Ct. at 753; Fitzgerald v. Peek, 636 F.2d 943, 944 (5th Cir. 1981); cert. denied, 452 U.S. 916, 101 S. Ct. 3051, 69 L. Ed. 2d 420 (1981); Wilson v. Thompson, 593 F.2d 1375, 1381 (5th Cir. 1979), aff'd after remand, 638 F.2d 801 (5th Cir. 1981); Shaw v. Garrison, 467 F.2d 113, 119-22 (5th Cir.), cert. denied, 409 U.S. 1024, 93 S. Ct. 467, 34 L. Ed. 2d 317 (1972).

Id. at 525-526.

Rowe involved a situation in which the State of Alabama charged a former cooperator with murder several years after he provided cooperation against others involved in the same crime. Id. at 525. Among other things, the defendant (1) testified at several trials about his involvement in the murder; (2) was relocated and provided with a new job and identification by the FBI for his protection as a result of his extensive cooperation; and (3) the prosecutor on the prior case testified that the defendant was offered immunity. Id. The only question before the court was whether the admitted agreement extended beyond the term of the then-sitting State Attorney General. Id. at 530 n. 4. The Rowe court found that the defendant had clearly

demonstrated an unambiguous agreement not to prosecute at any time, that such an agreement had induced the defendant's substantial cooperation, and that "in the absence of credible evidence that Rowe testified untruthfully or otherwise failed to perform his part of the bargain", his prosecution, after being assured of immunity from prosecution by state prosecutors, was a per se bad faith prosecution.

Unlike Rowe, Salter has failed to demonstrate that his case falls within one of the *Younger* exceptions. First, Salter has pointed to no facts which suggest the presence of bad faith or exceptional circumstances. In his complaint, Salter alleges that "Dixon agreed...to grant Salter immunity and/or use immunity, in that Dixon agreed that any truthful statement given by Salter, or any information derived from his statements and information, would not be used against him". (Doc. 1 ¶ 10). Salter further alleges that Dixon "promised that if Salter provided truthful statements and information, she would not use Salter's statements against him in order to prosecute him". (Doc. 1 ¶ 33). Additionally, Salter contends that:

> The only substantive evidence available against Salter in the ongoing criminal prosecution comes directly from his statements to Dixon and the investigators, and the information contained therein. But for Salter's immunized statements, the state of Alabama would not have sufficient evidence to prosecute Salter or any other person for [the victim's] death.

9

(Doc. 1 ¶ 22). The clear import of Salter's allegations is that Dixon agreed that the statements and other information that he provided to her would not be used to prosecute him, not that he would not be prosecuted[1]. Thus, unlike the situation in Rowe, in this case, there is no evidence of an unambiguous agreement not to prosecute. Moreover, there is no evidence that Dixon has in fact breached the alleged agreement not to use the information that Salter provided. While Salter speculates that Dixon must have used the information he provided to secure an indictment against him, he has not offered any facts to support his assertions. In the absence of such facts, he has failed to make a plausible showing of bad faith or exceptional circumstances that would warrant an exception to the *Younger* doctrine.

Likewise, Salter's assertion that federal court is the only avenue available to him to enforce his immunity agreement is without merit. According to Salter, in Ex Parte Graddick, 501

---

[1] Courts recognize two types of immunity agreements. Transactional immunity "accords full immunity from prosecution for the offense to which the compelled testimony relates." United States v. Harvey, 869 F.2d 1439, 1445 (11th Cir. 1989) (citing Kastigar v. United States, 406 U.S. 441, 453, 92 S. Ct. 1653, 1661, 32 L. Ed. 2d 212 (1972)). Use immunity prohibits the use of compelled testimony, or any evidence derived directly or indirectly from that testimony, against the witness in a criminal prosecution. In contrast to transactional immunity, use immunity does not prohibit the government from prosecuting the witness for crimes about which he testified, provided the government proves that it has other evidence to support the prosecution that is derived from a legitimate source wholly independent of the compelled testimony. Id. at 1445 (citing Kastigar v. United States, 406 U.S. 441, 453, 92 S. Ct. 1653, 1661, 32 L. Ed. 2d 212 (1972)).

10

So.2d 444, 446 (Ala. 1986), the Alabama Supreme Court held that "…in order for an immunity agreement to be valid it must be signed by the district attorney and approved by the trial judge". Thus, his agreement would not be recognized by Alabama courts, and in fact, his motion to dismiss the indictment based on the alleged immunity agreement was rejected by the state trial court. Notwithstanding his assertions to the contrary, Salter has an adequate remedy at law. A review of the Ex Parte Graddick decision reveals that it did not involve nor address a federal constitutional claim. Further, there is no question that Salter may raise his constitutional claims in his state court criminal proceeding at trial, and in any direct and collateral appeals he may file if convicted.[2]

---

[2] Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, a federal court may grant a state prisoner a writ of habeas corpus when his federal constitutional claim has been "adjudicated on the merits in State court" if the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [*738] Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Finally, Salter has not established irreparable harm that would warrant intervention. In Kugler v. Helfant, 421 U.S. 117, 123-25, 95 S. Ct. 1524, 44 L. Ed. 2d 15 (1975)[3], the Supreme Court made clear that irreparable injury does not include injury which is incidental to every prosecution brought lawfully and in good faith. See also Younger, 401 U.S. at 46 ("the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution could not, by themselves, be considered "irreparable" [injury] in the special legal sense of the

---

[3] In Kugler, the Court explained that:

    The policy of equitable restraint expressed in Younger v. Harris, in short, is founded on the premise that ordinarily a pending state prosecution provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights. See Steffel v. Thompson, 415 U.S. 452, 460, 94 S. Ct. 1209, 1216, 39 L. Ed. 2d 505. Only if "extraordinary circumstances" render the state court incapable of fairly and fully adjudicating the federal issues before it, can there be any relaxation of the deference to be accorded to the state criminal process. The very nature of "extraordinary circumstances," of course, makes it impossible to anticipate and define every situation that might create a sufficient threat of such great, immediate, and irreparable injury as to warrant intervention in state criminal proceedings. But whatever else is required, such circumstances must be "extraordinary" in the sense of creating an extraordinarily pressing need for immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation.

421 U.S. at 124-25, 95 S. Ct. at 1530-31

term."). Accordingly, the mere fact of a criminal prosecution is not sufficient to establish irreparable harm.

## III. Conclusion

Accordingly, the undersigned finds that this Court is compelled under *Younger* to abstain from considering the merits of Salter's claims regarding the breach of his alleged immunity agreement in his pending criminal case as such claim is not cognizable in a 42 U.S.C. § 1983 action at this time. Younger, 401 U.S. at 43-44. Therefore, the undersigned recommends that Dixon's Motion to Dismiss be **GRANTED**, and this action be **DISMISSED WITHOUT PREJUDICE**[4]. See Smith v. Mercer, 266 F. App'x 906, 908 (11th Cir. 2008) (per curiam) (noting that "[a] dismissal pursuant to the Younger doctrine is without prejudice, and does not preclude later re-filing of the complaint").

### Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects

---

[4] In a § 1983 action, a prosecutor has absolute immunity for damages for all activities that are "'intimately associated with the judicial phase of the criminal process.'" Van de Kamp v. Goldstein, 555 U.S. 335, 341, 129 S.Ct. 855, 859, 172 L.Ed.2d 706 (2009) (quoting Imbler v. Pachtman, 424 U.S. 409, 430, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976)). That is, a prosecutor is entitled to absolute prosecutorial immunity from damages in a § 1983 action for performing her function as an advocate for the government. Buckley v. Fitzsimmons, 509 U.S. 259, 272-73, 113 S.Ct. 2606, 2615, 125 L.Ed.2d 209 (1993); Rehberg v. Paulk, -- U.S. --, 132 S.Ct. 1497, 1503, 182 L.Ed.2d 593 (2012).

to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. 636(b)(1); **Fed.R.Civ.P.** 72(b); S.D. ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and he consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." *11th Cir. R. 3-1.* In order to be specific, an objection must identify the specific finding or specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**ORDERED** this **29th** day of **August, 2016.**

                                       /s/ Sonja F. Bivins
                               **UNITED STATES MAGISTRATE JUDGE**